FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 JAN 20 AM 9: 50

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| CHARLES GLAZE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 304-64 |
| | ) | |
| JOHNNA HALL, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant in this action filed by plaintiff under Title 42, United States Code, Section 1983 has submitted a motion for summary judgment. Doc. 31. Plaintiff responded to the motion on June 23, 2005, Doc. 43, and August 1, 2005, Doc. 56. For the reasons that follow, the Court **REPORTS** and **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED**, that judgment be **ENTERED** in favor of defendant, and that this civil action be **CLOSED**.[1]

---

[1] Defendant also filed a motion to dismiss on April 20, 2005, based on plaintiff's refusal to testify at his deposition. Plaintiff indicated in his response to the motion that he intended to testify at a later date. The record does not indicate whether plaintiff was ever deposed. Because the Court recommends that defendant's summary judgment motion be granted, defendant's motion to dismiss, Doc. 27, should be **DENIED** as **MOOT**.

## I. BACKGROUND

Plaintiff, a state prisoner, arrived at Milan State Prison on December 16, 2003. Soon after his arrival, he visited Dr. Okuwabi, a prison physician, complaining of severe hip pain. Def. Ex. A, ¶ 4. Dr. Okuwabi diagnosed plaintiff with trochanteric bursitis and prescribed Motrin for his pain. Id. Plaintiff visited defendant Hall, a prison nurse and the only remaining defendant in this case,[2] on December 21, 2003, and requested a "lay-in" because he was scheduled to start a work detail that day.[3] Defendant refused the "lay-in," but advised plaintiff to submit a health service request form so that he could see a doctor. In the two subsequent days, plaintiff and a prison duty officer again asked defendant about a "lay-in" for plaintiff, but defendant refused. Pl. Ex. Q, ¶¶ 2-4. On December 24, 2003, plaintiff submitted a health service request form, in which he complained that his hip pain had not improved despite taking six times the recommended daily dosage of Motrin. Def. Ex. A, ¶ 6.

Dr. Okuwabi again saw plaintiff on December 30, 2003, at which time Dr. Okuwabi ordered an x-ray of plaintiff's hip, issued plaintiff a "bottom bunk" profile and a "no prolonged standing over 15 minutes" profile, and prescribed Tylenol for plaintiff's pain. Def. Ex. A, ¶ 7. On January 14, 2004, plaintiff received refills of Motrin and Tylenol. Def. Ex. A, ¶ 9.

Plaintiff saw Dr. Deen, another prison doctor, on January 28, 2004, for a follow-up

---

[2] Dr. Deen and Dr. Okuwabi were dismissed from this case by order of the district judge on October 18, 2005. Docs. 68, 72.

[3] The Court infers that a "lay-in" would have excused plaintiff from attending his work detail.

2

appointment. Dr. Deen reviewed plaintiff's x-ray and examined plaintiff's hip. He concluded that plaintiff's hip was improving and opined that he might have suffered from a strained hip, rather than bursitis. He advised plaintiff to continue to take Tylenol for pain and to return to normal activity. Def. Ex. A, ¶ 10. Plaintiff received the Tylenol prescribed by Dr. Deen on January 30, 2004. Def. Ex. A, ¶ 11.

On February 25, 2004, plaintiff saw Dr. Wexler, another prison doctor, after complaining of increased pain in his hip after he had taken all of his prescribed Motrin. Dr. Wexler prescribed more Motrin and continued plaintiff's Tylenol prescription. Def. Ex. A, ¶ 12. Plaintiff subsequently received refills of his medications from defendant on March 22, 2004, April 9, 2004, and April 23, 2004. Def. Ex. A, ¶¶ 14-16. Plaintiff continued to request "lay-ins" from defendant, but defendant either denied or ignored the requests. Pl. Exs. G, I.

Plaintiff filled out a health services request on May 6, 2004, in which he complained that his hip pain was not improving. Defendant informed plaintiff that she would refer him to a doctor and advised him to continue taking Tylenol and Motrin. Dr. Onyekaba saw plaintiff on May 12, 2004, and changed his diagnosis to left thigh lipoma. Dr. Onyekaba also prescribed Motrin for six months. Def. Ex. A, ¶ 18. On May 20, 2004, Dr. Onyekaba, citing plaintiff's normal hip x-rays taken on January 5, 2004, declined to renew his "bottom bunk" and "no prolonged standing" profiles. Def. Ex. A, ¶ 20. Plaintiff has since been transferred from Milan State Prison and indicates that the condition of his hip has improved with continued consumption of Motrin and Tylenol. Pl. Ex. Q, ¶¶ 2, 3, 16, 17.

Defendant was present during each of plaintiff's visits to prison doctors, but she is

3

not a doctor or nurse practitioner and is not authorized to issue drug prescriptions. She can only renew a prescription that has been written within ninety days and provides for refills that have not been filled. Plaintiff does not allege that defendant ever denied him refills that she was authorized to provide. Def. Ex. A, ¶ 23.

In his Section 1983 complaint, plaintiff alleges that between December 16, 2003, and his visit to the prison doctor on December 30, 2003, defendant knew of the pain in his hip but refused to provide medical assistance or to issue "lay-ins." He also complains that Dr. Deen and defendant did not renew his prescriptions on his January 28, 2004, visit, which resulted in increased pain until he received new prescriptions on February 25, 2004, from Dr. Wexler. Finally, plaintiff claims that defendant "used her influence" to affect Dr. Onyekaba's diagnosis on May 12, 2004.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials

---

[4] For purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

4

on file, that there are no genuine issues of material fact to be decided at a trial. <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the <u>non-moving</u> party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. <u>Clark</u>, 929 F.2d at 606-08 (explaining <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970) and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. <u>Clark</u>, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. <u>Adickes</u>, 398 U.S. at 157.

If the moving party meets its burden, the non-moving party must then "demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Clark</u>, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255 (quoting <u>Adickes</u>, 398 U.S. at 158-59). A genuine issue of

material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### III. ANALYSIS

In his complaint, plaintiff contends that defendant was deliberately indifferent to the pain in his left hip, which he alleges is symptomatic of a serious medical condition. In defendant's motion for summary judgment, she contends that she consistently provided adequate medical attention to plaintiff for his condition.

The Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment on prisoners. Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999). The Supreme Court has held that Eighth Amendment claims have both an objective and a subjective component: (1) the prisoner must allege a deprivation that is "sufficiently serious" to implicate constitutional concerns and (2) the prisoner must demonstrate that the prison official had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 297-98 (1991)). "Deliberate indifference," the requisite state of mind for all Eighth Amendment claims except excessive force, requires proof that the defendant disregarded a risk of harm of which he knew. Farmer, 511 U.S. at 829, 837 (rejecting objective test and adopting subjective one).

Because a prisoner is unable to care for his medical needs as a result of his incarceration, the Eighth Amendment requires prison authorities to provide medical care for those they incarcerate. Estelle v. Gamble, 429 U.S. 97, 103 (1976). Based on this rudimentary principle, the Supreme Court concluded that "deliberate indifference to a

6

prisoner's serious illness or injury states a cause of action under § 1983." Id. at 105. The Court noted that an official's indifference could be manifested by a "prison doctor['s] . . . [inappropriate] response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Id. at 104-05. The Court was careful to caution, however, that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106. For example, "an inadvertent failure to provide adequate medical care" does not violate a prisoner's rights. Id. at 105.

In order to succeed in a medical indifference claim, a plaintiff must satisfy both objective and a subjective components of the deliberate indifference standard. Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994). To satisfy the objective component, a plaintiff must show that his medical need is serious, or that the need "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the need for a doctor's attention." Id. at 1187. For the subjective component, a plaintiff must show that the defendant possessed "knowledge of the need for medical care" and displayed "the intentional refusal to provide that care." Id. at 1186.

Regarding the objective component, Dr. Okuwabi diagnosed plaintiff at separate times with bursitis and lipoma. Bursitis is the inflammation or irritation of the bursa, a sac filled with "lubricating fluid, located between tissues such as bone, muscle, tendons, and skin." Web MD, Bursitis, http://www.webmd.com/content/article/78/95604.htm (Jan. 11, 2006). Bursitis is treated with avoidance of activities that caused the condition, rest to the injured area, ice applied to the injured area, and over-the-counter anti-inflammatory medicines. Id. Lipoma is "a growth of fat cells in a thin, fibrous capsule usually found just below the skin." Web MD, Lipoma, http://webmd.com/hw/skin_and_beauty/tp21226.asp

(Jan. 11, 2006). The condition is rarely serious and does not cause pain. Id.

If Dr. Okuwabi's May 12, 2004, diagnosis of lipoma is accurate, then plaintiff's condition would not be severe enough for him to recover under Section 1983. Lipoma requires little, if any, medical attention. A diagnosis of bursitis, on the other hand, would warrant medical treatment. Depending on the severity of the condition, a patient diagnosed with bursitis might be advised to rest, apply ice to the injured area, refrain from the physical activity that caused the injury, or to take anti-inflammatory medication. Out of an abundance of caution, the Court will credit plaintiff's initial diagnosis of bursitis and consider whether defendant failed to treat such a condition.

Defendant does not contest her knowledge of plaintiff's initial diagnosis of bursitis. She was present when Dr. Okuwabi diagnosed the condition and prescribed anti-inflammatory medication as treatment on December 16, 2003. Plaintiff contends that defendant should have ordered a "lay-in" for him, which presumably would have excused him from work activity, in the days after his diagnosis. Based on the diagnosis and treatment ordered by Dr. Okuwabi, however, there is nothing in the record to suggest that defendant was aware that plaintiff's condition required him to refrain from physical activity. Dr. Okuwabi only prescribed pain medication as treatment and did not direct plaintiff to rest or refrain from work.[5] Plaintiff's suggestion that his condition was serious enough to warrant a "lay-in" is not supported by the evidence of record, nor did defendant have subjective knowledge that plaintiff's condition warranted that he be excused from work.

The record indicates that defendant provided the pain medication prescribed to

---

[5]Plaintiff, in fact, was never ordered by a doctor to refrain from work.

8

plaintiff after Dr. Okuwabi's diagnosis on December 16, 2003. When he complained of continued pain, she arranged another visit with Dr. Okuwabi and advised plaintiff not to consume more pain medication than the doctor had directed. The Court finds no evidence to suggest that plaintiff's condition warranted a "lay-in" from defendant, nor is there any evidence to suggest that defendant ever denied plaintiff medication or medical treatment.

As to plaintiff's contention that defendant did not renew his prescription for pain medication after his January 28, 2004, examination by Dr. Deen, nothing in the record suggests that defendant was authorized to prescribe pain medication or that she ever denied plaintiff pain medication that was prescribed. Dr. Deen elected not to continue plaintiff's Motrin prescription after his January 28, 2004, examination. Defendant had no authority to prescribe medication on her own, and she should not be held liable for Dr. Deen's decision not to renew plaintiff's Motrin prescription.

Finally, regarding plaintiff's contention that defendant "improperly influenced" Dr. Okuwabi on his May 12, 2004 visit, plaintiff presents no evidence to suggest that Dr. Okuwabi's May 12 diagnosis of him as suffering from lipoma was improperly influenced by defendant, or even that the diagnosis was wrong. Plaintiff's contentions here amount to no more than unsupported speculation.

## IV. CONCLUSION

For the reasons stated above, defendant's summary judgment motion should be **GRANTED**. This civil action should accordingly be **CLOSED** and judgment

9

**ENTERED** in favor of defendant.[6]

SO REPORTED and RECOMMENDED this 20th day of January, 2006, at Augusta, Georgia.

```
                              _____
                              W. LEON BARFIELD
                              UNITED STATES MAGISTRATE JUDGE
```

---

[6]The Court also recommends, for the reasons set forth in note 1, that defendant's motion to dismiss, Doc. 27, be **DENIED** as **MOOT**.